FILED
OCT 31 2017
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES of AMERICA,

v.  Criminal No. 2:17cr124

DEBRA P. WILSON,

Defendant/Appellant.

## OPINION & ORDER

This matter comes before the Court on Defendant Debra P. Wilson's ("Defendant's") appeal from a Magistrate Judge's finding that she is GUILTY of Count Three in the three-count criminal Information in this matter. Doc. 50. For the reasons stated herein, the Court **AFFIRMS** the judgment of the Magistrate Judge.

### I. BACKGROUND

**A. Facts**

The Government agrees with the Defendant's statement of facts but adds a few additional facts. See Doc. 55 at 1–2. Thus, the agreed facts are as follows:

"Upon her arrival at the [Naval Air Station Oceana MWR Outdoor Rental Equipment Facility (the 'MWR')] on October 17, 2016, the Defendant became upset and began yelling at MWR staff members because they refused to help her remove a heavy pressure washer from her vehicle, while providing assistance to other customers. ([Trial Tr. ('TT.')] 9-10). Ms. Irey, the manager at the MWR facility, called security due to the Defendant's escalating behavior. (TT. 10). Ms. Irey, a lay witness, testified that she did not observe anything regarding the

Defendant's ability to stand or walk. (TT. 11-12). Another employee, Alec Jones, testified that the Defendant was "negative and aggressive" (TT. 20); however, he offered no testimony regarding the defendant's physical condition or that he observed any evidence of intoxication.

"Roger Knight, was a former officer employed by the CNIC, the Department of the Navy's police force, on the date of the alleged offense. (TT. 22). At that time, his field-training officer Sergeant Pratis was assisting former officer Knight. Mr. Knight testified that the Defendant's clothing was disheveled (TT. 24); however, the Defendant was doing manual labor that day with a pressure washer. He also testified that her speech was "slightly slurred, but it was kind of hard to pick up because of an accent that she had." (TT. 24). Mr. Knight also testified that the Defendant's eyes were bloodshot. Id. He also indicated that she was pacing around a lot and he believed he observed a slight sway. (TT. 25). He also testified that he believed he smelled the odor of an alcoholic beverage. Id.

"Upon the request of Mr. Knight, the Defendant voluntarily consented to perform certain field sobriety tests. (TT. 26). Prior to performing the field sobriety tests, the Defendant advised Mr. Knight that she was under the care of a physician and she was taking various medications. (TT. 26). Mr. Knight failed to ask the Defendant any follow up questions about the types of medications she had consumed that day or what medical conditions she had. Id. Mr. Knight testified that he had the Defendant perform the Horizontal Gaze Nystagmus ("HGN") test. (TT. 27). The Defendant, by counsel, objected to the admission of the result of the HGN test because Mr. Knight was not qualified to offer testimony of a medical nature regarding the nystagmus of the eye or whether there was a standard deviation due to his minimal training and experience. (TT. 27). The Magistrate Judge overruled the Defendant's objection, but stated that he didn't

attribute much weight to the HGN test. (TT. 28). Mr. Knight testified that he observed four clues of intoxication. Id.

"Next, Mr. Knight administered the walk and turn test and gave the Defendant the standard instructions. (TT. 29). The Defendant lost her balance because she was wearing flip-flops. Id. She restarted the test with bare feet and Mr. Knight testified that she missed heel to toe on three of the first nine steps before stopping to ask if she was supposed to turn following the ninth step. (TT. 30). He also testified that she used her hands for balance. Id.

"Mr. Knight also instructed the Defendant on how to perform the one-legged stand test. (TT. 30-31). The Defendant raised her leg and counted to eleven before asking if she had to continue the test. (TT. 31). Mr. Knight instructed the Defendant that she had to continue until 30. The Defendant counted 15, jumped to 30, and then discontinued the test. (TT. 31).

"Mr. Knight also administered a Preliminary Breath Test (the "PBT") to the Defendant. The Defendant objected to the admissibility of the results of the PBT due to concerns about the reliability of this test. (TT. 31-36). Initially, the Court overruled the defense objection and admitted the results of the PBT as to Count Three, but not Count One. Upon the conclusion of the trial, the Court stated that it was not relying on the results of the PBT in reaching its decision to convict the Defendant of Count Three. (TT. 106). Following the administration of the PBT, the Defendant was arrested for Driving under the Influence of alcohol at 3:30 p.m. (TT. 40). This charge was dismissed later upon a Government motion.

"Mr. Knight then transported the Defendant to the base police precinct to the Intoxilyzer room (TT. 42-43). Officer Walker administered the Intoxilyzer test to the Defendant. Mr. Knight testified that the Defendant became hostile and loud at the station and began making offensive and inflammatory statements to the police officers. (TT. 44-48).

"Sergeant Prattis testified that he did not notice the odor of alcohol on the Defendant until someone else brought the odor of alcohol to his attention. (TT. 55-56). Sergeant Prattis testified that he walked close to the Defendant after receiving this information and detected an odor of alcohol. (T. 56). Sergeant Prattis testified that the Defendant was uncooperative during the administration of the field sobriety tests and 'did what she wanted to do.' (TT. 57). He also testified that she refused to submit to any further testing after the walk and turn test. (TT. 57).

"Master at Arms, Second Class, Solla ('Officer Solla') testified that he detected an [odor] of alcohol coming from the Defendant. (TT. 64) He also testified that she showed 'some signs of slurred speech.' (TT. 64).

"Officer Walker testified that he attempted to administer two breath alcohol tests; however, the samples were deficient. (TT. 67). He also testified that her eyes were bloodshot, she was sweating, and he detected an odor of alcohol. (TT. 68).

"The Defendant testified that she was using a power washer to build a deck with bricks, which is why her clothes may have appeared disheveled to the officers. (TT. 78). The Defendant testified that she was not drinking alcohol prior to coming to the MWR. (TT. 79).

"Eric Pruett testified as a defense witness on behalf of the Defendant. (TT. 89). Mr. Pruett testified that the base police released the Defendant to his custody. Id. Further, he testified that she was not intoxicated at the time she was released to his custody. Id. Mr. Pruett testified that he picked up the Defendant around 6:00 p.m. (TT. 91)

"Upon the conclusion of the evidence, the Court found the Defendant guilty of Count Three of the Superseding Information after finding that the evidence presented was sufficient to 'support the conclusion that she was intoxicated as defined in Virginia Code § 4.1-100.' (TT. 105)." Doc. 54 at 3–7.

In addition to the agreed facts, the Government cites additional testimony from Ms. Irey and Mr. Jones as relevant to the instant appeal. Doc. 55 at 2. Regarding Ms. Irey, it adds that

> Ms. Irey testified that the Defendant appeared as though she had "just gotten up from a nap" and was not attired in "typical afternoon wear for 3:00 p.m." (TT.12). She also testified that she observed the Defendant "had her hand on her vehicle the whole time" after she first parked and exited her vehicle (TT. 11) and "shuffle[d] her feet slightly" when she moved (TT. 12).

Id. It also elaborates on Mr. Jones's testimony in the agreed facts by noting that he "testified that the Defendant spoke in a 'loud,' 'very negative[']' and 'aggressive' tone of voice (TT. 20) with 'a lot of cussing' (TT. 19-20)." Id.

## B. Procedural History

On October 24, 2016, the Government filed a three-count criminal Information charging Defendant with:

> Count One: Driving Under the Influence of Alcohol, in violation of 18 U.S.C. §§ 7, 13 assimilating Va. Code. §§ 18.2-266, 18.2-270.
> Count Two: Disorderly Conduct, in violation of 18 U.S.C. §§ 7, 13 assimilating Va. Code. § 18.2-415.
> Count Three: Abusive Language While Intoxicated in Public Place, in violation of 18 U.S.C. §§ 7, 13 assimilating Va. Code. § 18.2-388.

Doc. 1. On February 15, 2017, Defendant moved to dismiss Count Two of the Information. Doc. 18. Chief Judge Rebecca Beach Smith held a hearing on the Motion to Dismiss on March 10, 2017, Doc. 22, and subsequently DENIED the Motion in a written Order, Doc. 25. On March 28, 2017, the Federal Public Defender's Office moved to withdraw from representing Defendant. Doc. 26. Chief Judge Smith held a hearing on the Motion to Withdraw, Doc. 28, and GRANTED the Motion, Doc. 30. She then appointed the current counsel for Defendant, Jason Dunn. Doc. 32.

On May 15, 2017, the Government filed a superseding three-count criminal Information charging Defendant with

5

> Count One: Operate a Motor Vehicle in an Improper Manner, in violation of 18 U.S.C. §§ 7, 13 assimilating Va. Code. § 46.2-869.
> Count Two: Curse and Abuse, in violation of 18 U.S.C. §§ 7, 13 assimilating Va. Code. § 18.2-416.
> Count Three: Abusive Language While Intoxicated in Public Place, in violation of 18 U.S.C. §§ 7, 13 assimilating Va. Code. § 18.2-388.

Doc. 36. Upon review of the superseding Information, Chief Judge Smith reassigned the entire case to Magistrate Judge Robert J. Krask.

On August 7, 2017, Magistrate Judge Krask held a bench trial in this matter. Doc. 46. He FOUND Defendant NOT GUILTY as to Counts One and Two and GUILTY as to Count 3. Doc. 49. He sentenced Defendant to a fine of $250, a special assessment of $5, and six (6) months of probation. Id.

On August 11, 2017, Defendant filed her notice of appeal challenging "her conviction as to Count Three and her sentence." Doc. 50. She filed the trial transcript with this Court on August 28, 2017. Doc. 52. The Court entered a scheduling Order for briefing on August 29, 2017. Doc. 53. Defendant filed her brief on September 27, 2017. Doc. 54. The Government filed its response on October 30, 2017. Doc. 55.[1]

## II. LEGAL STANDARD

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402; see also Fed. R. Crim. P. 58(g)(2)(B).

"The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). Accordingly, when a defendant challenges the sufficiency of the evidence, the district court must view the evidence

---

[1] The Government's brief was one (1) business day late. Due to an error in the docketing system, the Government never received a copy of the scheduling Order or Defendant's brief and was unaware of either until the day it filed its brief. In view of the Government's lack of fault for the delay and its prompt remedy, the Court GRANTS LEAVE for the untimely filing.

"in the light most favorable to the Government." United States v. Bursey, 416 F.3d 301, 306 (4th Cir. 2005) (citing United States v. Pasquantino, 336 F.3d 321, 332 (4th Cir.2003) (en banc)). Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. Id. (citing United States v. Leftenant, 341 F.3d 338, 342–43 (4th Cir. 2003)).

Substantial evidence supports the verdict if there is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Tait v. United States, 763 F. Supp. 2d 786, 790 (E.D. Va. 2011). The district court may not overturn a substantially supported verdict based upon a determination that the verdict is unpalatable or that "another, reasonable verdict would be preferable." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). Furthermore, the Court must consider both circumstantial and direct evidence and "allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

### III. ANALYSIS

The conviction on appeal in this case is for violation of Va. Code § 18.2-388 (2017), which provides: "If any person profanely curses or swears or is intoxicated in public, whether such intoxication results from alcohol, narcotic drug or other intoxicant or drug of whatever nature, he shall be deemed guilty of a Class 4 misdemeanor." Va. Code § 4.1-100 (2017) defines "intoxicated" as "a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior."

The Magistrate Judge based his finding that Defendant was intoxicated in public on several facts. See Trial Tr. at 105–106. He noted her difficulty performing field sobriety tests. Id. at 105:19–23, 106:1–4. He cited the unanimous testimony that she smelled of alcohol and the testimony that her eyes were bloodshot and glassy and she swayed on occasion. Id. at 105:23–25. He also observed that her belligerency and general behavior supported the conclusion that she had been drinking. Id. at 106:5–8. He specifically excluded the PBT from the evidence he relied on as a basis for his finding on Count Three. Id. at 106:8–16.

Defendant argues that the evidence was insufficient because (1) there is no chemical test that confirms her intoxication and (2) she had a medical condition and was on various prescriptions that could have alternatively caused her behavior. Doc. 54 at 8. She insists that the evidence is insufficient to support her conviction because her acts and her performance on field sobriety tests could have been caused by her prescriptions, and the evidence does not prove that she was intoxicated beyond a reasonable doubt. See id.

The Government responds that the Magistrate Judge properly believed the testimony of four (4) law enforcement officers and two (2) lay witnesses over the Defendant's own testimony. Doc. 55 at 2–4. It argues that circumstantial evidence need not "exclude every reasonable hypothesis of innocence" in order to suffice for conviction. Id. (quoting United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir. 1989)). Beyond that legal argument, it observes that all four (4) officers testified that Defendant smelled of alcohol. Id. at 2. It also notes that some of the officers observed slurred speech and bloodshot eyes that support the conclusion that Defendant was intoxicated. Id. It contends that the only testimony supporting medical issues as an alternate cause came from the Defendant herself, and it notes that the Magistrate Judge did not find her testimony credible. Id. at 3 (citing Trial Tr. at 111).

8

The record supports the Magistrate Judge's conclusion. Testimony from multiple law enforcement officers supports the finding that Defendant was intoxicated. The trial court is also entitled to weigh the credibility of witnesses, see United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002), and it found that Defendant's alternative causation testimony was not credible. In view of the record evidence and the trial court's credibility determinations, the Court **FINDS** that there was sufficient evidence to conclude that Defendant was intoxicated and accordingly **AFFIRMS** the judgment of the Magistrate Judge.

## IV. CONCLUSION

For the reasons stated above, the Court **AFFIRMS** the judgment of the Magistrate Judge.

The Clerk is **REQUESTED** to send a copy of this Opinion & Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 31, 2017